# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS ESTRADA,<br><br>  Plaintiff,<br><br>  v.<br><br>NORTH KERN STATE PRISON, *et al.*,<br><br>  Defendants. | Case No. 1:18-cv-00667-SAB (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DISMISSAL OF ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM, FAILURE TO PROSECUTE, AND FAILURE TO OBEY COURT ORDERS<br><br>(ECF Nos. 17, 24)<br><br>**FOURTEEN (14) DAY DEADLINE** |

Plaintiff Nicholas Estrada is a former state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

**I.**

**INTRODUCTION**

Plaintiff filed his original complaint on May 16, 2018. (ECF No. 1.) Before his original complaint could be screened, Plaintiff filed a first amended complaint on July 20, 2018. (ECF No. 7.) On February 28, 2019, the Court screened Plaintiff's first amended complaint and granted Plaintiff leave to file a second amended complaint. (ECF No. 9.)

After receiving three extensions of time, Plaintiff filed his second amended complaint on

1

July 22, 2019.  (ECF No. 16.)  On September 23, 2019, the Court screened Plaintiff's second amended complaint and found that Plaintiff failed to state a cognizable claim for relief.  (ECF No. 17.)  The Court's screening order provided Plaintiff with the pleading and legal standards that applied to his claims and granted Plaintiff leave to file a third amended complaint within thirty days after service of the order.  (Id.)  Further, Plaintiff was expressly warned that, if he failed to file a third amended complaint in compliance with the Court's order, the Court would recommend to a District Judge that this action be dismissed, with prejudice, for failure to state a claim, failure to obey a court order, and failure to prosecute.  (Id. at 16.)

On November 8, 2019, after Plaintiff failed to timely file a third amended complaint or otherwise communicate with the Court, the Court ordered Plaintiff to show cause in writing why this action should not be dismissed for failure to prosecute, failure to obey a court order, and failure to state a claim.  (ECF No. 20.)  The Court granted Plaintiff fourteen (14) days from the service of the order to either file a third amended complaint or a written response showing cause why this action should not be dismissed.  (Id.)

In response to the November 8, 2019 order to show cause, Plaintiff filed a motion for a 30-day extension of time to file a third amended complaint on November 25, 2019.  (ECF No. 22.)

On November 26, 2019, the Court vacated the November 8, 2019 order to show cause, granted Plaintiff's motion for an extension of time, and ordered Plaintiff to file a third amended complaint within thirty (30) days from the date of service of the order.  (ECF No. 23.)

On January 6, 2020, after Plaintiff failed to timely file a third amended complaint or otherwise communicate with the Court, the Court ordered Plaintiff to either file a third amended complaint or show cause in writing why this action should not be dismissed for failure to state a claim, failure to comply with the Court's September 23, 2019 and November 26, 2019 orders, and failure to prosecute, within fourteen (14) days from the date of service of the order.  (ECF No. 24.)  Plaintiff was again expressly warned that failure to comply with the Court's order would result in a recommendation to a District Judge that this action be dismissed, with prejudice, for failure to state a claim, failure to obey court orders, and failure to prosecute.  (Id. at 2.)

The deadline for Plaintiff to file either a third amended complaint or a written response showing cause why the action should not be dismissed expired on January 23, 2020. To date, Plaintiff has not filed a third amended complaint, a written response showing cause why this action should not be dismissed, or otherwise communicated with the Court. Accordingly, the Court recommends dismissal of this action for the reasons discussed below.

## II.

## DISCUSSION

### A. Failure to State a Claim

#### 1. Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see also 28 U.S.C. § 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant

has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

### 2. Summary of Allegations

Plaintiff names North Kern State Prison Warden Kelly Santoro, Lieutenant John Doe, Sergeant John Doe, Correctional Officer Resubaut, Olga Beregovskaya, M.D., and D. Cena, R.N. as Defendants.

Plaintiff alleges that, on March 28, 2016, Plaintiff had arrived at the North Kern State Prison ("NKSP") reception center to be classified and housed in the California Department of Corrections and Rehabilitation ("CDCR"). After being classified with 30 points, Plaintiff was housed at Facility C, Building 4, which housed minimum security prisoners. Plaintiff was housed in Building 4 for approximately a month and a half.

During the second week of May 2016, Correctional Sergeant John Doe came to Building 4 and informed Plaintiff that he was being transferred to a different facility pursuant to a transfer order approved by Third Watch Commander Lieutenant John Doe. Plaintiff asserts that Defendant Lieutenant John Doe failed to adequately supervise his or her subordinate correctional officers. Plaintiff was moved to Facility D, Building 3. Facility D Yard had six buildings, which housed and segregated maximum security prisoners for different classification purposes, such as dividing general population from sensitive needs or protective custody inmates and dividing prison gangs.

Plaintiff was an affiliate of a "STG" (a security threat group or prison gang) called the 25 or Dos Cinco. Plaintiff alleges that, upon transfer from county to state custody, an inmate's security level, special treatments, behaviors, write ups, and gang affiliations are transferred with the prisoner to CDCR. In his case, Plaintiff asserts that CDCR was aware of his affiliation with the 25 or Dos Cinco because his county jail custody gang file arrived at NKSP with him when he was transferred from county to state custody. The Dos Cinco prison gang is the rival or enemy of the Northern Riders prison gang. CDCR was aware that Facility D, Buildings 3 and 5 housed inmates who were members of, or affiliated with, the Northern Riders prison gang. Specifically,

Facility 'D,' Building 3, Cell 228L housed inmates who were members of, or affiliated with, the Northern Riders. On May 25, 2016, Plaintiff was assaulted by three members of the rival Northern Riders prison gang, which caused him to suffer a fractured nose and injuries to head, body, and back of his legs. The correctional officer on duty failed to report the complete events and, instead, falsified the Rules Violation Report to report only one assailant instead of three. Plaintiff asserts that he was found not guilty of the Rules Violation Report because his injuries were consistent with two or more assailants that were not reported in the Rules Violation Report or in the medical reports.

After the assault, Plaintiff was taken to the infirmary for medical care. He received x-rays and even the x-ray technician recognized that Plaintiff's nose was fractured. Plaintiff's injury was so severe that when the nose bone broke, its sharp edges ripped through Plaintiff's skin. "CDCR Medical Facility" acknowledged and documented that Plaintiff had a common fracture on the bridge of his nose with a collapsed nasal cavity, which needed additional support, i.e., a nose brace, cast, nasal tubing to allow air flow, etc. Plaintiff was given two choices to close up the wound: glue or stitches. Plaintiff was given six stitches to close the wound. CDCR medical staff failed to straighten the bridge of Plaintiff's nose after the fracture occurred, which caused Plaintiff to have to hand set the bone himself. Defendant Beregovskaya acknowledged that Plaintiff's nose was fractured and that there were extreme bone deformities, but Defendant Beregovskaya failed to follow procedure and send Plaintiff to an outside hospital for adequate medical care from a plastic surgeon. During his initial treatment or his dressing changes, Plaintiff was never told that he would receive any type of examinations by a plastic surgeon.

On an unstated date, CDC officers came to Plaintiff's cell to transport him to an outside hospital. When Plaintiff asked what the appointment was for, he was told that it was for a change of his dressings. Plaintiff was additionally told that he would not be provided with a sack lunch and that they would not be stopping for lunch outside the prison. At that point, Plaintiff decided that he could wait until CDCR medical staff arrived to get his dressings changed. The CDCR officers went to the control booth, obtained a blank refusal form, and had Plaintiff sign it and wrote that he was satisfied with the CDCR medical staff. Plaintiff was never informed that he

was to see an outside specialist or plastic surgeon at the outside hospital. Plaintiff asserts that the CDCR officers failed to provide Plaintiff with a proper refusal form that was completely filled out and described the exact medical appointment that Plaintiff was refusing. Plaintiff alleges that, by just having him sign the refusal form and then filling in the medical services that he refused, the CDCR officer is falsifying medical documents and, if the medical staff is abiding by this behavior, then they are condoning the officer's activities. Plaintiff states that he would not have refused to go to the appointment if he had known that the appointment was for an examination with a plastic surgeon.

Plaintiff also asserts that Defendant Cena filled in all of the information regarding the medical services that Plaintiff allegedly refused on a blank medical refusal form. Then, Defendant Cena either forged Plaintiff's signature on the form himself or had Defendant Resubaut forge Plaintiff's signature on the form. Plaintiff alleges that Defendants Cena and Resubaut were deliberately indifferent when they conspired to cover up any legal actions that Plaintiff might take against the medical facility.

Plaintiff asserts that CDCR correctional officers and medical staff failed to transport him to an outside hospital to accommodate all of his emergency medical needs, such as bone setting and surgery, that the CDCR medical facility was not equipped to provide. Further, CDCR failed to provide immediate plastic surgery services and/or specialist to prevent disfigurement and damage. Finally, Plaintiff asserts that CDCR medical failed to property set and apply proper medical dressing to the nasal bone. As a result, Plaintiff's nose was permanently disfigured and deformed. Specifically, Plaintiff's nose has a permanent curve to the right, which prevents air flow travelling to and from the lungs through Plaintiff's right nostril. Further, Plaintiff's right and center nasal passages have collapsed.

After the May 25, 2016 assault, Plaintiff was housed at Facility D, Building 4. When he arrived at Building 4, Plaintiff was informed that Building 4 was a "victims unit for affiliates of the 'STG' Dos Cinco/25." (Id. at 6.) Plaintiff alleges that "[t]hese victims were numerous and was documented in other assaults and RVR incidents reports within the institution." (Id.) Due to the numerous assaults, incident reports, and staff operation meetings, Defendant Santoro had been

informed and was aware of the constant feuding between prison gangs. In fact, that was the reason why they were segregated. However, Defendant Santoro failed to oversee and train officers and staff properly in order to protect the health and safety of the prisoners. Instead of protecting inmates, "the officers listed as Defendant incited and coordinate[d] prisoner assaults to the point that I.G.I. and the Warden had to organize a way for the two 'STG' groups to form a peace treaty." (Id. at 7.) Further, while he was getting his dressings changed, Plaintiff received a verbal confession from Correctional Officer Arroyo, who worked in the D Yard Medical Facility "between May 25, 2017 and June 14, 2016 3rd Watch," and who explained that there was a conspiracy against the 25 prison gang as punishment for gang members' past and present behavior towards officers. However, Defendant Santoro failed to conduct a formal investigation into the prefabrication of Rules Violation Reports and facilitation of the incited assaults by correctional officers acting under the color of law.

Plaintiff alleges that, due to the actions or inactions of Defendants, he has suffered a fractured nose that was improperly set and is now permanently disfigured, stitches, two black swollen eyes, bruising on the back side and head, emotional distress, pain and suffering, and post-traumatic stress disorder, which he is receiving therapy for.

Plaintiff seeks monetary damages in the amount of $2,500,000.00, costs of suit, reasonable attorney's fees, declaratory relief, and a monetary award to pay for reconstructive surgery.

3. Analysis

a. **Federal Rule of Civil Procedure 8**

Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (citation and internal quotation marks omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678

(citation omitted). This is because, while factual allegations are accepted as true, legal conclusions are not. Id.; see also Twombly, 550 U.S. at 556-57; Moss, 572 F.3d at 969. Therefore, a plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citations and internal quotation marks omitted).

Here, Plaintiff's second amended complaint is not a short or plain statement of his claims. Plaintiff's second amended complaint appears to consist of new pages and various pages from his original and first amended complaints. This mixture of allegations has caused Plaintiff's second amended complaint to contain allegations that appear contradict themselves. For example, at one point, Plaintiff alleges that unnamed CDCR officers obtained a blank medical refusal form and had Plaintiff sign the form and write that he was satisfied with the CDCR medical staff. However, at another point, Plaintiff alleges that Defendant Cena filled out a blank medical refusal form with all of the information regarding the medical services that Plaintiff allegedly refused, and, then, either forged Plaintiff's signature himself, or had Defendant Resubaut forge Plaintiff's signature. It is unclear if Plaintiff is referring to the same medical refusal form in these allegations or two different refusal forms.

Further, many of Plaintiff's allegations are ascribed to "CDCR," "CDCR medical staff," "CDCR correctional officers," and "CDCR officers." Since Plaintiff fails to identify which specific Defendants he is referring to when he states "CDCR," "CDCR medical staff," or "CDCR officers," Plaintiff's complaint fails to give fair notice of all of the allegations and claims directed against each separately named Defendant. Gauvin v. Trombatore, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) ("Plaintiff must allege the basis of his claim against *each* defendant to satisfy Federal Rule of Civil Procedure 8(a)(2)[.]" (italics added)); see also Van Dyke Ford, Inc. v. Ford Motor Co., 399 F. Supp. 277, 284 (D. Wis. 1975) ("Specific identification of the parties to the activities alleged by the plaintiffs is required … to enable the defendant to plead intelligently.").

For these reasons, Plaintiff's second amended complaint fails to comply with Rule 8(a)'s simplified pleading standard.

**b.      Supervisory Liability**

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of *respondeat superior*. Iqbal, 556 U.S. at 676–77; Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1020–21 (9th Cir.2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Supervisors may be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205–06 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009). Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Redman v. Cnty. of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by Farmer v. Brennan, 511 U.S. 825 (1970).

i.      Defendant Lieutenant John Doe

Plaintiff alleges that Defendant Lieutenant John Doe failed to adequately supervise his or her subordinate correctional officers, including Defendant Sergeant John Doe. However, as previously stated, a supervisor cannot be held liable under § 1983 based on the actions or omissions of their subordinates. Therefore, Plaintiff has not alleged a cognizable supervisory liability claim against Defendant Lieutenant John Doe.

ii.      Defendant Santoro

First, Plaintiff alleges that Defendant Santoro, the Warden of NKSP, is liable under § 1983 because, even though Defendant Santoro was aware of the constant feuding between prison gangs, Defendant Santoro failed to oversee and train officers and staff properly in order to protect the health and safety of the prisoners housed at NKSP. A supervisor's failure to train subordinates may give rise to individual liability under § 1983 where the failure amounts to deliberate indifference to the rights of persons with whom the subordinates are likely to come into contact. See Canell v. Lightner, 143 F.3d 1210, 1213-14 (9th Cir. 1998). To impose liability under this theory, a plaintiff must demonstrate the subordinate's training was inadequate, the

inadequate training was a deliberate choice on the part of the supervisor, and the inadequate training caused a constitutional violation. Id. at 1214; see also City of Canton v. Harris, 489 U.S. 378, 391 (1989); Lee v. City of Los Angeles, 250 F.3d 668, 681 (9th Cir. 2001). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick v. Thompson, 563 U.S. 51, 61 (2011) (citation omitted).

Here, Plaintiff's statement that Defendant Santoro failed to train officers and staff properly is conclusory and unsupported by any factual allegations. Initially, Plaintiff has not identified the specific omission in NKSP's training program that caused one or more named defendants to violate Plaintiff's constitutional rights or pled facts showing how the omission in NKSP's training program caused Plaintiff's alleged constitutional violation. Additionally, Plaintiff has not alleged facts demonstrating that, since the need for any, more or different training was obvious and the inadequacy of the training provided was so likely to result in constitutional violations, Defendant Santoro's failure to provide any, more, or different training was deliberately indifferent to the need for any, more, or different training. Finally, while Plaintiff has alleged that Defendant Santoro was aware of the constant feuding between prison gangs, Plaintiff has failed to allege any facts to show that Defendant Santoro was aware of a pattern of constitutional violations similar to the alleged constitutional violation that Plaintiff suffered. Therefore, Plaintiff has failed to allege a cognizable supervisory liability claim against Defendant Santoro for failure to train her subordinates.

Second, Plaintiff also pleads that Defendant Santoro failed to conduct a formal investigation into the falsification of Rules Violation Reports and facilitation of assaults occurring between prison gangs incited by correctional officers. However, while supervisory liability can exist where a supervisor knew of the violations and failed to act to prevent them, Plaintiff has not alleged any facts demonstrating that Defendant Santoro knew about the falsification of Rules Violation Reports and/or that correctional officers were facilitating prison gang assaults, but failed to do anything, such as conducting an investigation, to prevent the violations from continuing. Therefore, Plaintiff has failed to allege a cognizable supervisory liability claim

against Defendant Santoro for failing to act to prevent known continuing constitutional violations.

    **c.**    **Deliberate Indifference**

        i.    <u>Failure to Protect</u>

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 833 (1994). "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (internal quotation marks and citations omitted). "For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Id. Second, the prison official must subjectively have a sufficiently culpable state of mind, "one of deliberate indifference to inmate health or safety." Id. (internal quotation marks and citations omitted). The official is not liable under the Eighth Amendment unless he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. Then, the official must fail to take reasonable measures to abate the substantial risk of serious harm. Id. at 847. Mere negligent failure to protect an inmate from harm is not actionable under § 1983. Id. at 835.

Here, Plaintiff asserts that Defendant Santoro, Defendant Lieutenant John Doe, Defendant Sergeant John Doe, and Defendant Resubaut failed to protect him from a risk of harm at the hands of rival prison gang members by housing him in Facility D, Building 3 with the rival gang members. However, Plaintiff has failed to allege any facts demonstrating that Defendants Santoro, Lieutenant John Doe, Sergeant John Doe, and/or Resubaut knew that Plaintiff was an affiliate of the 25 or Dos Cinco prison gang, that the Dos Cinco prison gang was an enemy of the Northern Riders prison gang, and that Facility D, Building 3 housed inmates who were members of, or affiliated with, the Northern Riders. While Plaintiff has pled that "CDCR" was aware of his affiliation with the Dos Cinco prison gang because his affiliation was documented in his county jail custody gang file that was transferred from the jail to NKSP with him, this allegation

is insufficient to establish that Defendants Santoro, Lieutenant John Doe, Sergeant John Doe, and/or Resubaut actually knew that Plaintiff was an affiliate of the Dos Cinco prison gang. Additionally, Plaintiff has not pled any facts demonstrating that Defendant Santoro or Defendant Resubaut were personally involved in Plaintiff's transfer from Facility C, Building 4 to Facility D, Building 3. Therefore, Plaintiff has not stated a cognizable claim for failure to protect against Defendants Santoro, Lieutenant John Doe, Sergeant John Doe, or Resubaut.

        ii.        Denial of Medical Care

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds by Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (citation omitted).

A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985. Deliberate indifference may be shown by the denial, delay, or intentional interference with medical treatment or by the way in which medical care is provided. Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988). "Deliberate indifference is a high legal standard," Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. Jett, 439 F.3d at 1096.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be

substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105–06).) "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

"A difference of opinion between a physician and the prisoner – or between medical professionals – concerning what medical care is appropriate does not amount to deliberate indifference." Snow, 681 F.3d at 987. "To show deliberate indifference, the plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to plaintiff's health." Id.

1) "CDCR Medical Staff"

Plaintiff contends that, after he was assaulted by inmates belonging to a rival prison gang, "CDCR medical staff" failed to properly set his fractured nose, apply proper medical dressings to the fracture, failed to transport him to an outside hospital, or provide him with immediate plastic surgery or immediate access to an outside plastic surgeon in order to prevent disfigurement and damage. However, initially, in order to state a claim under § 1983, Plaintiff is required to allege facts showing that each individual defendant personally participated in the deprivation of his rights. Jones, 297 F.3d at 934. Therefore, allegations against a group of defendants such as the "CDCR medical staff" do not allege a cognizable claim. Here, other than the three specific defendants discussed below, Plaintiff has failed to identify any individual defendant who was aware of Plaintiff's serious medical need and failed to provide appropriate medical care.

Further, Plaintiff's allegations that the "CDCR medical staff" was deliberately indifferent because they failed to properly set his fractured nose, apply proper medical dressings, send him to

an outside hospital, or provide him with immediate access to plastic surgery services are conclusory statements unsupported by sufficient factual allegations. Therefore, Plaintiff has failed to allege a cognizable claim for deliberate indifference to serious medical needs against the "CDCR medical staff."

      2)      Defendant Beregovskaya

Plaintiff contends that, even though Defendant Beregovskaya acknowledged that Plaintiff's nose was fractured and that there were extreme bone deformities, Defendant Beregovskaya failed to follow procedure and send Plaintiff to an outside hospital for adequate medical care from a plastic surgeon. However, this allegation is contradicted by another allegation in Plaintiff's second amended complaint that, on an unstated date, correctional officers came to Plaintiff's cell to take him to a medical examination with a plastic surgeon at an outside hospital. Further, to the extent that Plaintiff is attempting to assert that Defendant Beregovskaya was deliberately indifferent because she did not immediately send Plaintiff to an outside hospital to be examined by a plastic surgeon, Plaintiff has failed to allege that any delay between the date of his injury and the date of his appointment with the outside plastic surgeon was harmful. McGuckin v. Smith, 974 F.2d 1050, 1062 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (*en banc*). Therefore, Plaintiff has not stated a cognizable claim against Defendant Beregovskaya for deliberate indifference to Plaintiff's serious medical needs.

      3)      Defendants Cena and Resubaut

Plaintiff contends that Defendant Cena was deliberately indifferent when he filled in a blank refusal form with all of the medical services that Plaintiff allegedly refused and either forged Plaintiff's signature himself or had Defendant Resubaut forge Plaintiff's signature. Further, Plaintiff alleges that Defendant Resubaut was deliberately indifferent when he forged, or conspired with Defendant Cena to forge, Plaintiff's signature on a medical refusal form.

However, these allegations appear to be contradicted by the allegation in Plaintiff's second amended complaint that unnamed CDCR officers obtained a blank refusal form and had Plaintiff sign the blank form and write that he was satisfied with the CDCR medical staff.

14

Further, the actions of completing a refusal form, forging Plaintiff's signature, or conspiring with someone to forge Plaintiff's signature on a refusal form are insufficient by themselves to state a claim for deliberate indifference. In order to state a claim for deliberate indifference in such circumstances, Plaintiff must allege facts demonstrating that: (1) Defendants Cena and Resubaut knew that Plaintiff had a serious medical need; (2) that, by completing the refusal form, forging Plaintiff's signature on the refusal form, and/or conspiring to forge Plaintiff's signature, Defendants Cena and Resubaut knew that Plaintiff would not be provided with the appropriate medical care Plaintiff needed; (3) that Defendants Cena's and Resubaut's actions caused Plaintiff not to receive appropriate medical care; and (4) that he suffered harm by being denied medical treatment due to Defendants Cena's and Resubaut's actions. See Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (concluding that prisoner can make "no claim for deliberate medical indifference unless the denial [of medical treatment] was harmful[]"). Therefore, Plaintiff has not stated a cognizable claim against Defendants Cena and Resubaut for deliberate indifference to Plaintiff's serious medical needs.

### d. Conspiracy

"Conspiracy is not itself a constitutional tort under § 1983. It does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation. Conspiracy may however, enlarge the pool of responsible defendants by demonstrating their causal connections to the violation; the fact of the conspiracy may make a party liable for the unconstitutional actions of the party with whom he has conspired." Lacey v. Maricopa Cnty., 693 F.3d 896, 935 (9th Cir. 2012) (internal citations omitted).

To establish a cognizable claim for conspiracy under 42 U.S.C. § 1983, a plaintiff must allege (1) the existence of an express or implied agreement among the defendants to deprive the plaintiff of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement. Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010). To establish a conspiracy, Plaintiff allege specific facts showing "an agreement or meeting of the minds to violate constitutional rights. To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the

conspiracy." Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) (internal citations and quotation marks omitted). The mere conclusory statement that defendants "conspired" together is not sufficient to state a cognizable claim. Woodrum v. Woodward Cnty., 866 F.2d 1121, 1126 (9th Cir. 1989).

Here, Plaintiff alleges that Defendants Cena and Resubaut conspired to complete a blank medical refusal form and forge Plaintiff's signature on the form in order to "to deflict (*sic*) [Plaintiff's] legal intentions" and "cover up any legal actions against the medical facility." However, Plaintiff's allegation that Defendant Cena and Resubaut conspired together is conclusory and unsupported by any facts. Further, Plaintiff has not alleged any facts demonstrating that Defendants Cena's and Resubaut's actions taken in furtherance of the conspiracy actually deprived Plaintiff of his constitutional rights. Therefore, Plaintiff has not stated a cognizable claim for conspiracy against Defendants Cena and Resubaut.

**B.      Failure to Prosecute and Failure to Obey Court Orders**

1.      Legal Standard

Local Rule 110 provides that "[f]ailure . . . of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions . . . within the inherent power of the Court." District courts have the inherent power to control their dockets and "[i]n the exercise of that power they may impose sanctions including, where appropriate, . . . dismissal." Thompson v. Housing Auth., 782 F.2d 829, 831 (9th Cir. 1986). A court may dismiss an action, with prejudice, based on a party's failure to prosecute an action, failure to obey a court order, or failure to comply with local rules. See, e.g., Ghazali v. Moran, 46 F.3d 52, 53–54 (9th Cir. 1995) (dismissal for noncompliance with local rule); Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (dismissal for failure to comply with an order requiring amendment of complaint); Malone v. U.S. Postal Serv., 833 F.2d 128, 130–33 (9th Cir. 1987) (dismissal for failure to comply with court order).

In determining whether to dismiss an action, the Court must consider several factors: (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of

cases on their merits; and (5) the availability of less drastic sanctions. Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986); Carey v. King, 856 F.2d 1439, 1440 (9th Cir. 1988).

2. Analysis

Here, the instant action has been pending since May 2018. Plaintiff was ordered to file a third amended complaint and has received multiple extensions of time to do so and still failed to comply by filing a third amended complaint. The Court cannot hold this case in abeyance awaiting compliance by Plaintiff. Thus, the Court finds that both the first and second factors weigh in favor of dismissal.

The third factor, risk of prejudice to the defendants, also weighs in favor of dismissal, since a presumption of injury arises from the occurrence of unreasonable delay in prosecuting an action. Anderson v. Air West, 542 F.2d 522, 524 (9th Cir. 1976). The fourth factor usually weighs against dismissal because public policy favors disposition on the merits. Pagtalunan v. Galaza, 291 F.3d 639, 643 (9th Cir. 2002). However, "this factor lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction," which is the case here. In re Phenylpropanolamine (PPA) Prods. Liab. Litig., 460 F.3d 1217, 1228 (9th Cir. 2006) (citation omitted).

Finally, the Court's warning to a party that failure to obey the Court's order will result in dismissal satisfies the "considerations of the alternatives" requirement. Ferdik, 963 F.2d at 1262; Malone, 833 at 132–33; Henderson, 779 F.2d at 1424. The Court's September 23, 2019 and January 6, 2020 orders expressly warned Plaintiff that his failure to comply with the Court's orders would result in a recommendation to dismiss this action, with prejudice, for failure to state a claim, failure to obey a court order, and failure to prosecute. (ECF Nos. 17, 24.) Thus, Plaintiff had adequate warning that dismissal could result from his noncompliance.

Additionally, at this stage in the proceedings, there is little available to the Court which would constitute a satisfactory lesser sanction while also protecting the Court from further unnecessary expenditure of its scarce resources. Plaintiff is proceeding *in forma pauperis* in this action, making monetary sanctions of little use, and the preclusion of evidence or witnesses is likely to have no effect given that Plaintiff has ceased litigating his case.

|   |   |
|---|---|
| 1 | **III.** |
| 2 | **ORDER AND RECOMMENDATION** |

Accordingly, the Court HEREBY ORDERS the Clerk of the Court to randomly assign a Fresno District Judge to this action.

Furthermore, it is HEREBY RECOMMENDED that this action be dismissed, with prejudice, based on Plaintiff's failure to state any cognizable claim upon which relief may be granted, failure to obey the Court's September 23, 2019 and January 6, 2020 orders, and failure to prosecute this action.

These findings and recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these findings and recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (quoting <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**February 4, 2020**__  _____
UNITED STATES MAGISTRATE JUDGE

18